Filed 6/17/15  P. v. Torres CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>JOSEPH R. GUEVARA TORRES,<br><br>　　　Defendant and Appellant. | B256103<br><br>(Los Angeles County<br>Super. Ct. No. VA123230) |

　　　APPEAL from a judgment of the Superior Court of Los Angeles County.  Henry J. Hall, Judge.  Affirmed.

　　　Kevin D. Sheehy, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Joseph R. Guevara Torres appeals from a judgment which sentences him to 25 years in state prison for two counts of assault with a firearm upon a peace officer and one count of possession of a firearm by a felon. Torres contends the sentence as to the possession charge should have been stayed pursuant to Penal Code[1] section 654 because his possession of the firearm constituted a single act with the assault with a firearm. The evidence supports a finding that Torres' possession of the firearm preceded and was separate from his use of it to assault the officers. We affirm the judgment.

## FACTS

On December 28, 2011, Deputies Victor Fernandez and Joseph Esqueda of the Los Angeles County Sheriff's Department were patrolling in the city of Bellflower in separate vehicles when they each received a call at 4:00 p.m. regarding a "suspicious" person looking into parked vehicles on Pimenta Avenue. The suspect was described as a male Hispanic in his 20's wearing a gray hooded sweatshirt with tan shorts. Deputy Esqueda spotted someone—later identified as Torres—fitting that description standing on the front lawn of a property on Pimenta Avenue. He stopped his patrol car to investigate. When he asked Torres to approach the car, Torres grabbed his left eye and told him someone had taken his eye. Torres then fled towards Lakewood Boulevard, cutting through an adjacent parking lot. Deputy Esqueda immediately followed him in the patrol car on to Lakewood Boulevard, but lost sight of Torres when he ran down a driveway.

Deputy Esqueda continued his search and eventually saw Torres standing on the porch of another home on Pimenta Avenue. Deputy Esqueda recognized Torres, even though he had taken off the gray hooded sweatshirt. Deputy Esqueda radioed for backup and Deputy Fernandez responded. Torres again fled when Deputy Fernandez arrived on the scene. Deputy Fernandez chased him on foot and Deputy Esqueda drove after him.

Shawn Mauinatu lives on the corner of Oak Street and Pimenta Avenue. He saw Torres running on Pimenta Avenue, carrying a "silver and black" gun in his right hand. Mauinatu saw Torres run behind a parked van. Because his dog was barking and "getting

---

[1] All further section references are to the Penal Code unless otherwise specified.

crazy," Mauinatu took him into the house. When he walked back outside, he heard multiple gunshots.

Deputy Fernandez also noticed Torres had a gun as he chased him on foot and immediately took cover behind a van. Deputy Fernandez opened fire when he saw Torres point the weapon at him. Meanwhile, Deputy Esqueda passed Torres in his patrol car and demanded he stop. Torres ignored him and Deputy Esqueda saw him hold a gun in his right hand. Deputy Esqueda fired at Torres. Believing Torres returned fire, Deputy Esqueda continued to shoot at Torres until he fell backwards and no longer posed a threat. Torres sustained gunshot wounds to his left arm, left buttock, left knee, thigh, finger, and left heel. Bullet fragments were also found in his spine.

A glove containing 10 live .38 Special rounds was found inside Torres' right pocket. A gun was found approximately five to eight feet from him. The gun was identified as a .38 Special revolver with a capacity of five rounds, three of which had been fired. A bullet recovered from the scene was determined to have been fired from Torres' gun.

Torres was charged with two counts of attempted murder of a peace officer (counts 1 & 2; §§ 664/187, subd. (a)), two counts of assault with a firearm upon a peace officer (counts 3 & 4; § 245, subd. (d)(1)), and one count of possession of a firearm by a felon (count 5; § 12021, subd. (a)(1)). It was further alleged as to counts 1 through 4 that Torres personally and intentionally discharged a firearm and personally used a firearm. (§ 12022.53, subds. (b)-(c).)

Trial began on April 5, 2013, which ended in a mistrial on the first four counts due to a hung jury. The jury returned a guilty verdict on count 5. In a retrial, the jury returned guilty verdicts on counts 3 and 4, but deadlocked on the attempted murder charges. The jury further found true the allegation that Torres personally used a firearm within the meaning of sections 12022.53, subdivision (b) and 12022.5, subdivisions (a) and (d), but found not true the allegation that Torres personally and intentionally discharged a firearm within the meaning of section 12022.53, subdivision (c). The

3

attempted murder charges were dismissed by the trial court and the People chose not to retry them.

At sentencing, the trial court denied probation and sentenced Torres to 24 years in state prison consisting of:  the upper term of eight years on count 3 plus 10 years pursuant to section 12022.53, subdivision (b); two years (one-third the midterm of six years) on count 4, plus three years four months pursuant to section 12022.53, subdivision (b) (one-third the midterm of 10 years); and eight months for count 5.  Additional fines and assessments were imposed and Torres was awarded 967 days of custody credit.  Torres timely appealed.

## DISCUSSION

Torres argues on appeal the sentence for the possession charge should be stayed under section 654 because it is an impermissible double punishment to the firearm-enhanced sentences for the assault charges.  We disagree.

Section 654[2] forbids multiple punishment of the same act.  Punishment for an act is limited to the sentence that provides the longest potential imprisonment.  Section 654 "is intended to ensure that defendant is punished 'commensurate with his culpability.' " (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)  Thus, section 654 applies where a single act underlies the charged crimes and "has been extended to cases in which there are several offenses committed during 'a course of conduct deemed to be indivisible in time.' " (*Ibid*.)  "It is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible." (*Ibid*.)  If the defendant had only a single intent and all of the offenses were incidental to that one objective, he may be punished only once.  If, on the other hand, he harbored multiple criminal objectives, he may be punished for each statutory violation " 'even though the

---

[2]     Section 654, subdivision (a), provides:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ."

4

violations shared common acts or were parts of an otherwise indivisible course of conduct.' " (*Ibid.*)

"Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. [Citations.] Its findings will not be reversed on appeal if there is any substantial evidence to support them. [Citations.]" (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143; *People v. Petronella* (2013) 218 Cal.App.4th 945, 963-964.) The accepted "procedure is to sentence defendant for each count and stay execution of sentence on certain of the convictions to which section 654 is applicable." (*People v. Miller* (1977) 18 Cal.3d 873, 886.)

A number of cases have addressed substantially similar facts. In *People v. Jones*, *supra*, 103 Cal.App.4th 1139, for example, the defendant fired several gunshots at his ex-girlfriend's home. The trial court imposed sentences for both shooting at an inhabited dwelling and for possession of a firearm by a felon. (*Id.* at p. 1142.) The defendant challenged his sentence on the ground his possession of the gun was incidental to and simultaneous with the primary offense of shooting at an inhabited dwelling. The appellate court disagreed, holding, "[w]hen an ex-felon commits a crime using a firearm, and arrives at the crime scene already in possession of the firearm, it may reasonably be inferred that the firearm possession is a separate and antecedent offense, carried out with an independent, distinct intent from the primary crime. Therefore, [Pen. Code] section 654 will not bar punishment for both firearm possession by a felon [Pen. Code,] (§ 12021, subd. (a)(1)) and for the primary crime of which the defendant is convicted." (*People v. Jones, supra*, 103 Cal.App.4th at p. 1141; see also *People v. Garcia* (2008) 167 Cal.App.4th 1550; *People v. Ratcliff* (1990) 223 Cal.App.3d 1401.)

In reaching its decision, the court explained, " ' "Whether a violation of section 12021, forbidding persons convicted of felonies from possessing firearms concealable upon the person, constitutes a divisible transaction from the offense in which he employs the weapon depends upon the facts and evidence of each individual case. Thus where the evidence shows a possession distinctly antecedent and separate from the primary offense,

5

punishment on both crimes has been approved. On the other hand, where the evidence shows a possession only in conjunction with the primary offense, then punishment for the illegal possession of the firearm has been held to be improper where it is the lesser offense." ' " (*People v. Jones, supra*, 103 Cal.App.4th at p. 1143, fn. omitted.)

We are persuaded by the analysis in *People v. Jones.* Substantial evidence supports an inference that Torres' possession of the firearm was distinctly antecedent to and separate from his assault on the deputies. It is reasonable to infer from the fact that Torres attempted to flee that Torres already had the gun when Deputy Esqueda first attempted to detain him. There is no evidence he retrieved the gun afterwards. Deputy Esqueda testified he did not observe Torres dispose of anything other than the gray sweatshirt and he never saw Torres discard anything. Both officers and Mauinatu saw Torres with a gun in his hand. The gun was later determined to have been fired at least three times, with one of the bullets found nearby. Live ammunition was found inside Torres' pockets. This is not a case where the evidence clearly shows the defendant's possession of the gun was simultaneous to its use. (See e.g., *People v. Venegas* (1970) 10 Cal.App.3d 814 [defendant obtained the gun during a struggle moments before the shooting]; *People v. Bradford* (1976) 17 Cal.3d 8 [defendant wrested the gun away from a police officer].)

Nonetheless, Torres contends there is no evidence he possessed a firearm "until after he had discarded his hooded sweatshirt in the bushes at, and left the porch of, 16602 Pimenta and had run to the corner of Pimenta and Oak Street where civilian Mauinatu saw him running and holding a firearm; neither Deputy Fernandez nor Deputy Esqueda saw appellant holding a firearm until later . . . ." Further, the jury found not true the additional allegation that Torres personally and intentionally discharged a firearm. Instead, the jury merely found Torres had personally used a firearm while committing these offenses. The trial court defined the phrase "*personally* uses" to the jury as either displaying the weapon in a menacing manner, hitting someone with the weapon, or firing the weapon. Torres argues the jury's findings inevitably lead to the conclusion that Torres "personally use[d]" the firearm by displaying it in a menacing manner. Thus,

6

Torres asserts the single act of possessing the firearm underlies all three counts and warrants application of section 654.

Torres relies on the California Supreme Court's decision in *People v. Jones* (2012) 54 Cal.4th 350 (*Jones*), to support his argument. There, the high court concluded section 654 prohibited multiple punishment for possession of a firearm by a felon, carrying a readily accessible concealed and unregistered firearm, and carrying an unregistered loaded firearm in public. (*Id.* at p. 352.) Although there was evidence that the defendant had the gun three days prior to his arrest, the jury clearly convicted the defendant of each crime due solely to his possession of the gun in his car when arrested, not on any antecedent possession. Defendant had the gun in his car when he was arrested, which meant he both carried it and possessed it. (*Id.* at p. 353.)

The facts presented to the California Supreme court in *Jones* are distinguishable from the facts in this case, however. Indeed, the California Supreme Court cited to the Court of Appeal decision in *People v. Jones, supra*, 103 Cal.App.4th at p. 1139, and noted that such "cases concerning how section 654 applies to a defendant who is convicted of possession of a firearm by a felon and of committing a separate crime with that firearm" "concern a very different situation, and we do not intend to cast doubt on them." (*Jones, supra*, 54 Cal.4th at p. 358, fn. 3.)

As discussed above, this is not a case where Torres' possession of the gun constituted a single act with his use of it. A reasonable inference can be made from the circumstances surrounding his initial encounter with Deputy Esqueda that he possessed the gun prior to his use of it to assault the officers. That no one saw him with the gun prior to Mauinatu is not dispositive. Neither is the jury's finding that Torres did not personally and intentionally discharge a firearm dispositive of, or even relevant to, whether Torres possessed the firearm prior to the gun battle with the deputies. Even if we accept Torres' interpretation of the jury's findings, that he only displayed the firearm in a menacing manner, that finding does not address his prior possession of the firearm.

**DISPOSITION**

The judgment is affirmed.

                                        BIGELOW, P.J.

We concur:


        FLIER, J.


        GRIMES, J